

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable L. A. Woods
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

> Opinion Number O-4855
> Re: Payment of transportation
> of scholastics under Rural
> Aid Bill (Acts 1941, Ch.549).

We have received your letter of September 14, 1942, in which you ask certain questions with reference to the above captioned matter. We quote the following from your letter:

> "We have a problem in transportation about which I should like to have your opinion.
>
> "One of the cases under this type is the Shanklin District in Bell County, which was approved by the Department of Education and the Joint Legislative Advisory Committee last fall to transport their pupils whose grades were not taught in Shanklin to Belton and Salado. You will note that Section 2 of Article 5 of House Bill 284, Acts of the 47th Legislature, requires that where two receiving schools transport children out of the same sending district, it must have the approval of the Department and the Committee. It later developed that Shanklin was entering into a contract to transfer the entire district to Belton as provided for in Article 8 of House Bill 284. I should like your opinion on these two questions:
>
> "1. Edward Wilson lived in Shanklin and attended school at Salado rather than going to Belton. Which is the home district of Edward Wilson--Shanklin, the district in which he actually resides, or Belton?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"2. Since the duplicate service was approved
by the Department and the Committee, would the
transfer of the district by contract make it il-
legal to pay transportation on children living
in Shanklin who continued to attend the Salado
School as originally planned and approved? You
will please bear in mind that no school was op-
erated in the Shanklin Distric t, and, therefore,
the grades of none of the children were taught
in the district in which they actually resided."

The approval of the transportation routes was made
under the authority of that part of Section 2, Article V, of
the Rural Aid Act (Acts 1941, 47th Leg., R. S., Ch. 549, H.B.
284, p. 880), which reads as follows:

"Sec.2.  In no instances may aid be granted
for pupils transported who attend a grade in
another school which grade is taught in such
pupil's home district.  No transportation aid
shall be granted for a pupil being transported
out of his home school district if two (2) or
more receiving schools are applying for trans-
portation aid from such pupil's home district
unless the bus routes through such district
have been approved by the State Department of
Education, and such approval confirmed by the
Joint Legislative Advisory Committee.  Aid shall
not be granted under any provisions of this ar-
ticle unless the pupil so transported actually
resides more than two and one-half (2 1/2) miles
from the school attended and is transported in
an approved bus over an approved route. * * * "

A short time after the routes were approved, the Shank-
lin district contracted to transfer its entire enrollment to
the Belton Independent School District under the provisions of
Article VIII of the Rural Aid Bill. You have informed us that
this contract was for the school year 1941-42. Section 1 of
Article VIII reads as follows:

"Section 1. For the school year 1941-42, upon
the agreement of the Board of Trustees of the dis-
tricts concerned or on petition signed by a major-
ity of the qualified voters of the district and
subject to the approval of the County Superintend-
ent, State Superintendent, and Joint Legislative
Advisory Committee, the trustees of a district
which may be unable to maintain a satisfactory
school may transfer its entire scholastic enroll-
ment, or any number of grades thereof, to a con-
venient school of higher rank, and in such event,
all of the funds of the district, including the
State Aid to which the district would otherwise
be entitled under the provisions of this Act, or
such proportionate part thereof as may be neces-
sary shall be used in carrying out said agreement;
provided that no aid shall be allowed for teachers
that are not actually employed in the contracting
schools."

You wish to know whether the Belton or the Shanklin
district is the home district of Edward Wilson and whether
the payment of transportation can legally be made for the
children who attended the Salado School after the above-
mentioned transfer contract was entered into.

Transportation aid may not be granted under the Rural
Aid Bill for pupils who attend a grade in a school which
grade is taught in such pupil's home district. Article V,
Section 2, supra. The question necessarily resolves itself
into a determination whether the transfer of the entire en-
rollment under Article VIII changes the home district of the
pupils. We are of the opinion that for the purpose of pay-
ing transportation aid under the Rural Aid Bill such change
is effected.

The transfer of the entire scholastic enrollment is
authorized where the sending district is unable to maintain a
satisfactory school. Manifestly, one of the factors which are
considered in determining whether a school is satisfactory or

Honorable L. A. Woods, page #4

not is the number of grades taught. It follows that one of the reasons for passing Article VIII, whereby the entire scholastic enrollment may be transferred, was to supply the grades which were needed and do away with the necessity of transferring students individually to other schools where their grades are taught. The receiving district receives the funds of the sending district, "including the State Aid to which the district would otherwise be entitled under the provisions of this Act, or such proportionate part thereof as may be necessary shall be used in carrying out said agreement". The bill provides for the transfer of the "entire" enrollment. We believe that it means what it says. For rural aid purposes, therefore, the receiving district is the home district of the students transferred under Article VIII.

We do not think that the identity of the sending district is destroyed by the transfer of its entire scholastic enrollment under Section 1 of Article VIII. In other words, the Shanklin Independent School District remains an independent school district, and its trustees continue to hold office and perform the duties incident thereto.

Article 2901, Revised Civil Statutes, reads as follows:

"Every child in this State of scholastic age shall be permitted to attend the public free schools of the district or independent district in which it resides at the time it applies for admission, notwithstanding that it may have been enumerated elsewhere, or may have attended school elsewhere part of the year".

It is our opinion that the scholastics residing in the confines of the Shanklin district are residents of such district for general purposes; but after the entire scholastic enrollment of such district has been transferred to the Belton Independent School District such scholastics are residents of the Belton district insofar as the payment of transportation aid is concerned. Your first question is answered in this manner.

In view of what we have said, it is our opinion that where the entire scholastic enrollment has been transferred under Section 1 of Article VIII, transportation aid may not be granted for pupils who attend a grade in another school which grade is taught in the receiving district. Your second question is, therefore, answered in the affirmative.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By George W. Sparks
Assistant

GWS/s

APPROVED SEP 24, 1942

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY WRIS
CHAIRMAN